**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JESSICA HARRIS, *on behalf of herself and others similarly situated*,

      Plaintiff,

     v.

UNIQUE LIFE, INC., RAJAH GRAY, and
MADELINE MARTINEZ

      Defendants.

---

Case No.:

**CLASS ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

Plaintiff JESSICA HARRIS ("Plaintiff Harris" or "Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, pursuant to this Class Action Complaint against UNIQUE LIFE, INC ("Unique Life")., RAJAH GRAY, and MADELINE MARTINEZ (collectively, "Defendants"), alleges the following:

## NATURE OF THE ACTION

1.    This action seeks to bring a stop to, and to obtain redress for those harmed by, Defendants' unlawful and discriminatory criminal history screening policies and practices, which have been used to deny employment opportunities to otherwise qualified job applicants.

2.    Plaintiff Harris brings this lawsuit on behalf of herself and all others similarly

situated against Defendants for willful and/or negligent violations of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq*, as amended by the Fair Chance Act, which prohibits New York City employers from taking adverse action against job applicants with conviction histories without (1) providing those applicants with a written analysis explaining the grounds of the adverse action (based on the Article 23-A factors, as detailed below) and (2) allowing the applicants a reasonable opportunity to respond to that analysis.

3.      Plaintiff Harris also alleges that Defendants violated the federal Fair Credit Reporting Act ("FCRA") when they took adverse action against her and Class members on the basis of a background check while refusing to provide them with a copy of the background check report and of their rights under the FCRA, as required under the FCRA.

4.      Plaintiff Harris further alleges that Defendants violated the New York State Fair Credit Reporting Act ("NY FCRA"), N.Y. Gen. Bus. Law § 380 *et seq.,* when they ordered background reports on Plaintiff and Class members but failed to provide them with a copy of Corrections Law Article 23-A (as described below).

**PARTIES**

*Plaintiff*

5.      Plaintiff Harris is a citizen of New York and a resident of Richmond County.

*Defendant*

6.      Defendant Unique Life, Inc. is a not-for-profit corporation organized under the laws of New York. It specializes in providing various forms of assistance, support, and therapy to individuals with special needs. Its three New York City locations are 3586 Boston Road *(3rd*

*Floor)*, Bronx, NY 10469, 2197 New England Thruway, Bronx, NY 10475, 182-26 Jamaica Avenue, Jamaica, NY 11423. It's address for service of process is c/o Dr. Akwasi Achampong, 1994 Hughes Avenue, Bronx, NY 10457.

7.    Defendant Rajah Gray is the Deputy Executive Director of Defendant Unique Life. As detailed below, he was directly involved in Unique Life's violations of NYCHRL, FCRA, and NY FCRA.

8.    Defendant Madeline Martinez is the Director of Human Resources of Defendant Unique Life. As detailed below, she was directly involved in Unique Life's violations of NYCHRL, FCRA, and NY FCRA.

## JURISDICTION AND VENUE

9.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this is a class action as defined by 28 U.S.C § 1332(d)(1)(B), whereby: (i) the proposed class consists of over 100 class members, (ii) a member of the putative class is a citizen of a different state than Defendants, and (iii) the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

10.    This Court has jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. § 1681p, which permits claims under the FCRA to be brought in any "court of competent jurisdiction" and 28 U.S.C. 1331. This Court also has jurisdiction over Plaintiff's NYCHRL and NY FCRA claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

11.    The Court has personal jurisdiction over Defendants because Defendants are organized under the laws of New York and do business in New York and because the events giving rise to this Complaint took place in New York.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a

two of Defendants' three offices are located in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

13. Contemporaneously with the filing of this Complaint, Plaintiff will mail a copy of the Complaint to the New York City Commission of Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of Section 8-502 of the New York City Administrative Code.

## LEGAL BACKGROUND

### The Fair Chance Act

14. New York City has determined that "there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on . . . conviction or arrest record." N.Y.C. Admin. Code § 8-101. Overbroad and/or arbitrary bans on hiring because of conviction histories undermine and violate New York City's clearly articulated policy. Such acts of discrimination "menace the institutions and foundation of a free democratic state." N.Y.C. Admin. Code § 8-101.

15. Accordingly, New York City amended its Human Rights Law ("NYCHRL") on October 27, 2015, with the Fair Chance Act, which "make[s] it an unlawful discriminatory practice for most employers, labor organizations, and employment agencies to inquire about or consider the criminal history of job applicants until after extending conditional offers of employment." *NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act*, Local Law No. 63 at 1 (2015). *See also* NYC Administrative Code 8-107(11-a)(a)(1)(3).

4

16.     Beyond prohibiting premature inquiries into criminal records, the Fair Chance Act also makes it an unlawful discriminatory practice for an employer to "[d]eclare, print or circulate or cause to be declared, printed or circulated any solicitation, advertisement or publication, which expresses, directly or indirectly, any limitation, or specification in employment based on a person's arrest or criminal conviction." NYC Administrative Code 8-107(11-a)(a)(1).

17.     The Fair Chance Act furthermore specifies the following procedures for inquiring into, and taking adverse action based on, criminal backgrounds, any deviation from which is unlawful:

> (b)  After extending an applicant a conditional offer of employment, an employer . . . may inquire about the applicant's arrest or conviction record if before taking any adverse employment action based on such inquiry, the employer, employment agency or agent thereof
>
>> (i)  provides a written copy of the inquiry to the applicant in a manner to be determined by the commission;
>>
>> (ii)  performs an analysis of the applicant under article twenty-three-a of the correction law and provides a written copy of such analysis to the applicant in a manner determined by the commission, which shall include but not be limited to supporting documents that formed the basis for an adverse action based on such analysis and the employer's . . . reasons for taking any adverse action against such applicant; and
>>
>> (iii)  after giving the applicant the inquiry and analysis in writing pursuant to subparagraphs (i) and (ii) of this paragraph, allow the applicant a reasonable time to respond, which shall be no less than three business days and during this time, holds the position open for the applicant.

N.Y.C. Admin Code § 8-107(11-a)(b).

18.     The Article 23-A requirements incorporated by the Fair Chance Act prohibit employers from denying employment to an individual "when such finding is based upon the

fact that the individual has previously been convicted of one or more criminal offenses, unless" employers can show either "a direct relationship" between the conviction(s) and the job being sought or "an unreasonable risk to property or to the safety or welfare of specific individuals or the general public." N.Y. Corr. Law § 752.

19.     To determine whether such a direct relationship and unreasonable risk exist, Article 23-A requires employers to consider the following eight factors before taking any adverse action on the basis of a job applicant's criminal record:

    (a)  The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.

    (b)  The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.

    (c)  The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.

    (d)  The time which has elapsed since the occurrence of the criminal offense or offenses.

    (e)  The age of the person at the time of occurrence of the criminal offense or offenses.

    (f)  The seriousness of the offense or offenses.

    (g)  Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.

    (h)  The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

N.Y. Correct. Law § 753.

20.     Employers may not deny employment to applicants without first justifying such a decision on the basis of these factors and then giving applicants an opportunity to respond to

this analysis. Under (g), prospective employers must also allow applicants to submit evidence of rehabilitation and good conduct to be considered in the analysis.

21.    The NYCHRL defines the employment relationship expansively, providing that "natural persons working as independent contractors in furtherance of an employer's business enterprise shall be counted as persons in the employ of such employer." NYC Administrative Code § 8-102(5).

22.    NYCHRL also provides that it shall be an unlawful discriminatory or retaliatory practice "[f]or any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so." N.Y.C. Admin Code § 8-107(6).

23.    The Fair Chance Act does not require an aggrieved party to prove any injury beyond the violation of the law itself:

> Donatella argues that the amendment is nonetheless devoid of merit because Harding did not suffer an injury as a result of Donatella's hiring practices. This court disagrees. The Fair Chance Act — in effect at the time — plainly provides that such a pre-offer inquiry regarding criminal history is an unlawful discriminatory practice. (*See* Local Law No. 63 (2015) of the City of New York § 2.) The New York City Administrative Code provides that a person aggrieved by an unlawful discriminatory practice may bring a cause of action for damages (including punitive damages), injunctive relief, or other appropriate remedies. (*See* Administrative Code §§ 8-107 (11-a) (g) and 8-502.) And a person may be aggrieved for purposes of § 8-107 (11-a) even if their only injury was the deprivation of a right protected by the Code. (*See* Administrative Code § 8-102 [definition of "Person aggrieved"].)

CARMELA HARDING, Plaintiff, - v - DONATELLA GCT LLC, DONATELLA ARPAIA, MARK GERAGOS, Defendant., 2019 N.Y. Misc. LEXIS 1675, *3-4

### *Fair Credit Reporting Act (FCRA)*

24.    The federal FCRA was enacted in 1970. Through its passage, Congress required that consumer reports be "fair and equitable to the consumer" and protect a "consumer's right to privacy" by "adopt[ing] reasonable procedures" to ensure "the confidentiality, accuracy,

relevancy, and proper utilization" of information contained within consumer reports. 15 U.S.C. §§ 1681(a)(4)-(b). A "consumer report" includes criminal background checks.

25.     Congress requires that "before taking any adverse action based in whole or in part on [a consumer report]," the employer taking the adverse action must provide "the consumer to whom the report relates" with:

(i) a copy of the report; and

(ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the [Consumer Financial Protection] Bureau under section 1681g(c)(3)[.]

15 U.S.C. § 1681b(b)(3)(A)(i) and (ii).

26.     The FCRA defines adverse action as both "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee," and "an action taken or determination that is . . . adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B)(ii) and (iv).

27.     In enacting the FCRA, Congress judged that an employer's failure to provide a consumer with a consumer report and a summary of his or her rights under the FCRA are both harms sufficient to establish Article III standing.

28.     Without notice that a consumer report is going to be used to take adverse action against them, job applicants cannot preserve their privacy, provide context for their conviction histories, or correct errors or other problems with the report.

29.     To help prevent such harms, the FCRA requires those ordering a consumer report from a consumer reporting agency to certify to the agency that they will comply with the FCRA's stand-alone disclosure and authorization requirements. See 15 U.S.C. § 1681b(b)(1)(A).

***New York Fair Credit Reporting Act (NY FCRA)***

30.    The NY FCRA requires that:

When a consumer reporting agency provides a consumer report that contains criminal conviction information, permitted by paragraph one of subdivision (a) of section three hundred eighty-j of this article, to a user, the person, firm, corporation or other entity requesting such report shall provide the subject of such report a printed or electronic copy of article twenty-three-A of the correction law governing the licensure and employment of persons previously convicted of one or more criminal offenses.

N.Y. Gen. Bus. Law § 380-g(d).

31.    Thus, one violates the Defendants the NY FCRA whenever one orders a consumer report from a consumer reporting agency without providing the subject of the report with a copy of Article 23-A (discussed above).

32.    The NY FCRA was enacted to "ensure that employers and prospective employees are informed about the mandates of Article 23-A of the correction law" because that information "will help to avoid illegal discrimination against persons with a criminal conviction." L. 2008, c. 465, § 2, eff. Feb. 1, 2009 (enactment of provision was to

## DEFENDANTS' UNLAWFUL CONDUCT

33.    In or around early September 2021, Plaintiff Harris applied for a position at Unique Life as a Direct Support Professional (DSP) through the *Indeed.com* job board. DSPs are home assistants who help disabled individuals with day-to-day tasks, including such things as bathing and meal preparation.

34.    On September 7, 2021, Plaintiff Harris was contacted by a Unique Life representative and invited to come in for an interview on September 9, 2021. She interviewed on that day and was immediately thereafter told that the job was hers. She simply needed to

undergo a background check and submit various items, such as references and fingerprints.

35.     Plaintiff Harris consented to the background check and submitted the required information over the next few days.

36.     Plaintiff Harris has a 15-year-old conviction for possession of a forged instrument.  She has had no problems with the law since that conviction.

37.     On September 16, 2021, Plaintiff Harris called Unique Life to ask about a specific start date. However, Unique Life's Director of Human Resources, Defendant Madeline Martinez informed Plaintiff Harris that she would not be hired because Unique Life had received unfavorable information regarding her fitness for the job from the Justice Center for the Protection of People with Special Needs ("Justice Center"). The Justice Center is a New York State agency that is charged with monitoring and regulating DSPs. Any complaints about DSPs must be reported to the Justice Center. Defendant Martinez related to Plaintiff Harris that the Justice Center had advised Unique Life that Plaintiff could not be trusted to be alone with vulnerable individuals.

38.     Plaintiff Harris was dumbfounded, since she had never had any complaints leveled against her that might have been relayed to the Justice Center. She had previously worked as a DSP at the Community Resource Center for the Developmentally Disabled and there had been no incidents of any kind.

39.     As shown by this screen shot, the Justice Center has very high standards when it comes to the backgrounds of DSPs and other helping professionals operating under its jurisdiction:

OVERVIEW

**Pre-Employment Checks**

The Justice Center conducts pre-employment checks on those seeking paid or volunteer positions with providers under Justice Center jurisdiction. Applicants would generally have regular, substantial, face-to-face contact with people who receive services in New York State. The pre-employment check process has two components: a check of the Justice Center's Staff Exclusion List and a Criminal Background Check. Running these checks helps keep both individuals with special needs and the workforce safe from people who may cause them harm.

FOR PROVIDERS

**Pre-Employment Checks**

| **Staff Exclusion List (SEL)** | **Criminal Background Checks (CBC)** |
|---|---|
| The Staff Exclusion List (SEL) contains the names of individuals found responsible for serious or repeated acts of abuse and neglect in New York State. They are prohibited from being hired by any agency or provider under Justice Center jurisdiction. | Certain providers must request a criminal background check (CBC) prior to hiring a new employee or volunteer. The Justice Center reviews the applicant's criminal history, and makes an initial determination on whether the applicant can be considered for employment. |
| LEARN MORE | LEARN MORE |

40.     Plaintiff Harris knew from her previous employment at the Community Resource Center that she met these standards. She had been deemed suitable to have "regular, substantial, face-to-face contact with people who receive services in New York State" and did not believe that the Justice Center would have told Unique Life anything else.

41.     Plaintiff Harris knew that Unique Life had ordered a background check on her and so must have learned of her old conviction for possession of a forged instrument. However, Plaintiff Harris could not believe this had caused Unique Life to withdraw its employment offer, since this was a nonviolent offense that had taken place fifteen years in the past and had nothing to do with the work responsibilities of a DSP. She was not attempting to get hired as a treasurer or accountant or any other position that involved control over an organization's finances.

42.     So, Plaintiff wondered whether the background check Unique Life had ordered contained inaccurate information and texted Unique Life to ask for a copy of the report. The

request was refused:



43.    So, also on September 16, Plaintiff Harris contacted the Justice Center to inquire about its correspondences with Unique Life and, sure enough, learned that the Justice Center had not disparaged her as claimed by Defendant Martinez.  The Justice Center stated that there was nothing problematic in her record and it had no concerns about her

44.    Plaintiff Harris then called Unique Life back and wound up speaking to Defendant Rajah Gray, Unique Life's Deputy Executive Director.  Confronted with the truth about the Justice Center's statements, Defendant Gray chalked up Defendant Martinez's earlier misrepresentations to a misunderstanding and then asked Plaintiff Harris to discuss her conviction. Plaintiff Harris responded that, in her opinion, there was nothing to discuss, given

that this old nonviolent offense did not speak to her ability to perform what would be her designated duties at Unique Life, duties that she had successfully executed with the Community Resource Center.  Defendant Gray appeared to accept this and told Plaintiff Harris that she would be contacted about an orientation date.

45.    Notwithstanding this promise, Plaintiff Harris was not contacted.  So, about a week later, Plaintiff Harris called Unique Life to ask about an orientation date. Defendant Martinez told Plaintiff that no orientation date had been set yet and that she was waiting to hear from human resources. Plaintiff found this response to be odd, given that Defendant Martinez was the Director of Human Resources and so would have to know. A few days later, Plaintiff Harris called again and received the same response. Unique Life did not subsequently contact her.

46.    Defendants violated the Fair Chance Act when they took adverse action against Plaintiff Harris (withdrawing her offer of employment) "based upon the fact that the individual has previously been convicted of one or more criminal offenses" when the criminal offense in question had no "direct relationship" to the job Plaintiff Harris was seeking and when it did not indicate "an unreasonable risk to property or to the safety or welfare of specific individuals or the general public." N.Y. Corr. Law § 752.  As Plaintiff Harris explained to Defendant Gray, her 15-year-old conviction for a nonviolent offense did not bear on her ability to provide support to Unique Life's clientele.

47.    It is irrelevant that Defendants may now argue to the contrary. The Fair Chance Act requires employers not only to perform an Article 23-A inquiry and analysis but also to then to "giv[e] the applicant the inquiry and analysis in writing" and then "allow the applicant a reasonable time to respond, which shall be no less than three business days and during this

time, hold[] the position open for the applicant." N.Y.C. Admin Code § 8-107(11-a)(b). Thus, Defendants have willfully breached their legal duties by depriving Plaintiff of her rights under the NYCHRL. Defendants acted unlawfully against Plaintiff by taking adverse action against her on the basis of her conviction history without heeding the restrictions of the Fair Chance Act.

48.     Defendants' treatment of Plaintiff Harris is reflective of their treatment of a Class of similarly situated others. As shown in the text message reproduced above, it was Defendants' general policy to withhold the results of background checks from applicants. Since applicants were, as a rule, not permitted even to know those results, Defendants could not have provided applicants with their Article 23-A analysis based on those results (and an opportunity to respond). That alone is a violation of the Fair Chance Act, regardless of whether the reasons for Defendants' adverse action were defensible in any individual case.

49.     In refusing to provide Plaintiff and Class members with the background reports they had commissioned, Defendants violated the FCRA, which requires that the subjects of those reports be provided with both copies of the reports and a description of their rights under the FCRA.

50.     Defendants also violated the NY FCRA with respect to Plaintiff and Class members. The NY FCRA requires that employers provide applicants with a copy of Article 23-A alongside the background report, but Defendants provided this neither to Plaintiff nor to Class members.

51.     Defendants' official policy of refusing to provide all the foregoing information—the background report, description of FCRA rights, a copy of Article 23-A, and a copy of their Article 23-A analysis with an opportunity to respond—meant that Plaintiff and

Class members would not discover inaccuracies in both the background reports and in Defendants' interpretations of the reports.

52.   Plaintiff suffered harm because she would have been gainfully employed by Defendants but for Defendants' unlawful acts. Defendants themselves acknowledged that there was no good reason not to hire Plaintiff Harris. As a result of those acts, Plaintiff Harris was forced to remain unemployed and suffered lost wages. Other Class members suffered similar harms.

53.   The ability to find employment is an essential part of reentering society for people with criminal histories. Recidivism declines when such individuals have viable employment prospects and other stabilizing resources in their communities. The Fair Chance Act was enacted to protect individuals with criminal convictions against irrational discrimination in employment and thus facilitate their reentry into society. Defendants' policy of discriminating against individuals with conviction histories frustrates these public policy objectives.

54.   On behalf of herself and others similarly situated, Plaintiff seeks compensatory damages, statutory damages; exemplary and punitive damages; injunctive and/or declaratory relief, pre-judgment and post-judgment interest; and reasonable attorneys' fees, costs, and expenses.

## CLASS ACTION ALLEGATIONS

55.   Plaintiff Harris brings this lawsuit as a proposed class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and the following three Classes:

56.   The **Fair Chance Class**, defined as:

All individuals with criminal records applying for employment with Defendants

in New York City who, during the applicable three-year limitations period, were (a) subjected to a criminal background check and (b) denied employment.

57.    The **FCRA Class**, defined as:

All individuals who, during the applicable five-year statute of limitations period, were subjected to an adverse action by Defendants at least in part because of information in their consumer reports without first being provided with a copy of their consumer report and/or a statement of their rights under the FCRA.

58.    The **NY FCRA** Class, defined as:

All individuals with criminal records applying for employment with Defendants in New York State who, during the applicable two-year statute of limitations period, (a) were denied employment and (b) had consumer reports requested about them by Defendants but were not provided with a copy of Article 23-A of the Corrections Law.

59.    These three classes are collectively referred to as "the Classes." Members of one or more of these three Classes are collectively referred to as "Class members."

60.    Plaintiff reserves the right to amend the foregoing class definitions based on information learned in the course of litigating this case.

61.    Class members are so numerous that joinder of all members is impracticable. The precise number of Class members is uniquely within Defendants' possession, and Class members may be notified of the pendency of this action by published and/or mailed notice.

62.    There are questions of law and fact common to Class members, and these questions predominate over any questions affecting only individual members. Common legal and factual questions include, among others:

(a)    whether Defendants violated the NYCHRL by denying employment to Plaintiff and the Fair Chance Class without first providing them with Defendants' Article 23-A analysis and a reasonable opportunity to respond to it;

(b)    whether Defendants violated the FCRA by failing to provide Plaintiff and the FCRA Class with a copy of their consumer report before taking adverse

16

action against them in violation of 15 U.S.C. § 1681b(b)(3)(A)(i) and whether Defendants violated the FCRA by failing to provide Plaintiff and the FCRA Class with a written description of their rights under the FCRA before taking adverse action against them in violation of 15 U.S.C. § 1681b(b)(3)(A)(ii);

(c)    whether Defendants violated the NY FCRA by failing to provide Plaintiff and the NY FCRA Class with a copy of Article 23-A of the Correction Law, in violation of N.Y. Gen. Bus. Law § 380-g(d);

(d)    whether Defendants were willful in their noncompliance with the requirements of the NYCHRL, FCRA, and NY FCRA;

(e)    whether statutory damages, compensatory damages, exemplary damages and punitive damages for Class members are warranted; and

(f)    whether a declaratory judgement and/or injunctive relief is warranted regarding Defendants' policies and practices.

63.    Plaintiff's claims are typical of the claims of the Classes she seeks to represent. As shown by Defendants' express statements, it is their standard practice to take adverse actions against applicants without complying with the Fair Chance Act, FCRA, and NY FCRA.

64.    Plaintiff will fairly and adequately represent and protect the interests of Class members because her interests coincide with, and are not antagonistic to, the interests of Class members. Plaintiff has retained Counsel who are competent and experienced in complex class actions. There is no conflict between Plaintiff and Class members.

65.    Class certification is appropriate under Rule 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Classes as a whole (or as to a specific subset of issues). The Class members are entitled to declaratory and injunctive relief to end Defendants' common, uniform, unfair, and discriminatory policies and practices.

66.    Class certification is also appropriate under Rule 23(b)(3) because common

questions of fact and law predominate over any questions affecting only individual Class members. Defendants have maintained a common policy of taking adverse action without first properly considering the mandatory factors laid out in the Correction Law or otherwise following relevant provisions of the NYCHRL (including the Fair Chance Act). Defendants' own statements reveal that this is a general policy and not a one-off event.

67.     Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Class members have been damaged and are entitled to recovery as a result of Defendants' uniform policies and practices. The amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution of this litigation. A class action will allow more individuals to obtain relief, given the high cost of bringing individual actions, while also saving judicial resources.

## CAUSES OF ACTION

## COUNT I

### VIOLATIONS OF NEW YORK CITY HUMAN RIGHTS LAW
### N.Y.C. Admin. Code. § 8-101 *et seq.*, § 8-107(11-a)

#### *Brought by Plaintiff on Behalf of Herself and the Fair Chance Class*

68.     Plaintiff, on behalf of herself self and the Fair Chance Class, incorporates the preceding paragraphs as if fully set forth herein and alleges as follows:

69.     Defendants violated the NYCHRL when they denied employment to Plaintiff and Class members on the basis of their criminal conviction histories without providing them with Defendants' Article 23-A analysis and a reasonable opportunity to respond to it.

70.     As a result of this failure, Plaintiff and Class members have lost employment opportunities, earnings, and other employment benefits.

71.     In addition to damages, Plaintiff and Class members seek injunctive and declaratory relief to correct Defendants' discriminatory policies and practices by compelling them to comply with the hiring procedures set forth by the Fair Chance Act.

## COUNT II

### VIOLATIONS OF FAIR CREDIT REPORTING ACT
### (15 U.S.C. § 1681b(b)(3)(A))
### *Brought by Plaintiff on Behalf of Herself and the FCRA Class*

72.     Plaintiff, on behalf of herself and the FCRA Class, incorporates the preceding paragraphs as if fully set forth herein and alleges as follows:

73.     Defendants violated the FCRA by taking adverse employment actions against Plaintiff and the FCRA Class based in whole or in part on the information contained within their consumer reports without first providing Plaintiff and Class members with a copy of their consumer reports, a written description of their rights under the FCRA, and a reasonable amount of time to respond to the report by identifying any inaccuracies.

74.     Defendants' policy caused concrete injury (including the risk of harm) to Plaintiff and the Class because they could not:

(a) evaluate information contained in the consumer reports to ensure accuracy;

(b) challenge and correct that information;

(c) explain the circumstances surrounding the information (even if accurate);

(d) explain why information reported should not preclude employment;

(e) learn of their rights and opportunities under the FCRA, including the opportunity to bring suit under the FCRA.

75.     Defendants acted willfully and in knowing or reckless disregard of their obligations and the rights of Plaintiff and the FCRA Class.

76.     Defendants' willful conduct is reflected by, among other things, the fact that they violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(3)(A).

77.     As a result of Defendants' actions, Plaintiff and the FCRA Class have been deprived of their consumer rights, prevented from timely and effectively contesting the adverse action, and have had their privacy invaded.

78.     Defendants' willful conduct makes them liable for statutory damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## COUNT III

### VIOLATIONS OF NEW YORK FAIR CREDIT REPORTING ACT
### (N.Y. Gen. Bus. Law § 380-g(d))

*Brought by Plaintiff on Behalf of Herself and the NY FCRA Class*

79.     Plaintiff, on behalf of herself and the NY FCRA Class, incorporates the preceding paragraphs as if fully set forth herein and alleges as follows:

80.     Defendants violated the NY FCRA by procuring consumer reports from Plaintiff and the NY FCRA Class without providing them with copies of Article 23-A of the Correction Law.

81.     Defendants' policy caused concrete injury (including the risk of harm) to Plaintiff and the NY FCRA Class, including but not limited to the fact that they could not learn of their rights under Article 23-A.

82.     Defendants acted willfully and in knowing or reckless disregard of their obligations and of the rights of Plaintiff and the NY FCRA Class.

83.     Defendants' willful conduct is reflected by, among other things, the fact that they violated a clear statutory mandate set forth in N.Y. Gen. Bus. Law § 380-g(d).

84.    As a result of Defendants' actions, Plaintiff and the NY FCRA Class have been deprived of their consumer rights, prevented from timely and effectively contesting the adverse action taken against them.

85.    Defendants' willful and/or negligent conduct makes them liable for actual damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to N.Y. Gen. Bus. Law § 380-l and N.Y. Gen. Bus. Law § 380-m.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Class members pray for relief as follows:

(a)    Certification of the case as a class action on behalf of the proposed Classes;

(b)    Designation of Plaintiff Harris as representative of Class members for all three Classes;

(c)    Designation of Plaintiff's counsel of record as Class Counsel for all three Classes;

(d)    Injunctive and/or declaratory relief to correct Defendants' discriminatory policies and practices;

(e)    An award of all applicable compensatory and statutory damages for violations of the NYCHRL, FCRA, and NY FCRA;

(f)    An award of all applicable punitive damages for all violations of the NYCHRL, FCRA, and NY FCRA found to be willful;

(g)    An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(h)    Pre-judgment and post-judgment interest, as provided by law;

(i)    Payment of a reasonable service award to Plaintiff Harris, in recognition of the services she has rendered and will continue to render to Class members, and the risks she has taken and will take; and

(j)    Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: December 17, 2021

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

*/s/ C.K. Lee*
By:  C.K. Lee, Esq.

C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff and the Class*